IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| DAVID CAZARES, | § |
| | § |
| V. | § CIVIL ACTION NO. G-03-235 |
| | § |
| BEN RAIMER, ET AL. | § |

## REPORT AND RECOMMENDATION

Plaintiff David Cazares, filing *pro se,* brings this complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Raimer and Hulipas were deliberately indifferent to his serious medical need by failing to properly treat him for Hepatitis C with pegylated interferon. As a result, Defendants' alleged deliberate indifference caused cirrhosis of the liver, progression of his disease and the rapid deterioration of his health. He seeks injunctive, declaratory and punitive relief. Now before the Court is Defendant Raimer and Hulipas' Motion for Summary Judgment, filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, to which Plaintiff has not responded.

This Court is cognizant that summary judgment may not be awarded by default, merely because the moving party has failed to respond. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the Court may not grant the motion, regardless of whether any response was filed." *Hetel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995)(citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). Nonetheless, the District Court may accept as undisputed the facts set forth in support of the

1

unopposed motion for summary judgment. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

In his complaint and accompanying grievances, Plaintiff asserts that on some date prior to 2001, during his incarceration at the Lynaugh and Terrell units of the Texas Department of Criminal Justice, Institutions Division, he was diagnosed with Hepatitis C. He alleges that he was told he would be treated with interferon, but, instead, was monitored and tested for three years until he developed cirrhosis of the liver and was told he had two to five years to live. He was never treated with interferon and was told that since he had developed cirrhosis, the interferon would not help as treatment for Hepatitis C. Plaintiff submitted his first grievance complaining that he was not receiving interferon treatment on June 12, 2001. The response to this grievance states: "Your lab work and exam are consistent with cirrhosis of the liver. Because of this, the antiviral will not help you. You have been informed of this information."

In their Motion for Summary Judgment, Defendants outline, in detail, the sequence of medical events in Plaintiff's medical history, and the reasons for the specific medical treatment that he received. The Court has also reviewed Plaintiff's medical records,[1] in detail.

The treatment of Hepatitis C with interferon and/or ribavirin is carefully regulated by TDCJ policy and procedure, which sets forth the criteria that inmates must meet before being considered for these medications.[2] According to the TDCJ Health Services Policy, only a gastroenterologist can determine whether to prescribe interferon and/or ribavirin. Before an inmate can be considered for these medications, he must (1) test consecutively four out of five times for ALT levels that exceed 1.5

---

[1] Defendants' Motion for Summary Judgment, Exhibit A.

[2] Defendants' Motion for Summary Judgment, Exhibit C, page 2.

to 2.0 times the upper limit of normal, which is 50; (2) have not less than eighteen months remaining on his sentence at the time of consideration; (3) have no assaults, drug, or tattooing cases within six months of consideration; and, (4) have no contraindications, such as cirrhosis, which would preclude treatment with these medications. If an inmate meets all of the above criteria and signs an agreement for treatment, he is referred to the UTMB Gastroenterology Clinic (GI Clinic) for further evaluation. If an inmate is approved for treatment by the gastroenterologist, a liver biopsy is performed and a determination is made as to whether treatment with interferon and/or ribavirin will benefit the patient.

In Plaintiff's case, his medical records reveal that he suffered from numerous, chronic conditions. In addition to being diagnosed with Hepatitis C in 1997, Plaintiff also suffered from cirrhosis of the liver; chronic obstructive pulmonary disorder; emphysema; asthma; tuberculosis; HIV+; pyloric ulcers; hernias; and, hyperlipidemia. Plaintiff was also a former IV drug abuser.

Physicians first noted four of five consecutive tests exceeding 1.5 to 2.0 times the normal upper limit for ALT levels in April, 1999, and issued a referral to the UTMB GI Clinic. Plaintiff, however, refused the referral, stating that he "wants to go when ready." Two months later, in June, 1999, Plaintiff was diagnosed with early cirrhosis of the liver.[3] Medical records evidence, however, that between 1999 and 2000, two additional referrals to the UTMB GI Clinic were issued for Plaintiff, and he refused them both. Finally, in June, 2000, Plaintiff signed an agreement for Hepatitis C treatment authorizing a gastroenterologist to review him as a possible candidate for interferon and/or ribavirin therapy.[4] The subsequent work-up was never completed, however, because Plaintiff's

---

[3] Defendants' Motion for Summary Judgment, Exhibit C.

[4] Defendants' Motion for Summary Judgment, Exhibit A, page 586.

cirrhosis effectively prevented him from qualifying for the medications, and he was informed of this on April 27, 2001.[5]

Defendants note that Plaintiff's history of drug and alcohol abuse, coupled with chronic infections associated with his numerous other maladies, made him a prime candidate for susceptibility to liver disease, and effectively precludes or negates his argument that the failure to treat him with interferon and/or ribavirin was the sole cause of his cirrhosis. Defendants further note that Plaintiff was referred to the GI Clinic for a workup to determine if he was eligible for interferon and/or ribavirin treatment on four occasions, and he refused to go on the first three. When he finally agreed to go, his cirrhosis had advanced to a stage that precluded the treatment.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety, *Farmer v. Brennan,* 511 U.S. 825 (1994), and encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Estelle,* 429 U.S. at 105-06. Hence, not every claim of inadequate or improper medical treatment is a violation of the Constitution; *see id.*; nor does a disagreement with a physician over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Merely alleging that prison doctors should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). Where there is undisputed evidence of sick calls, examinations, diagnoses and treatment, a

---

[5] *Id*. at 508; *see also* Defendants' Motion for Summary Judgment, Exhibit D.

claim of deliberate indifference can be negated, even if the treatment proves ultimately to be unsuccessful. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1989).

This Court is of the opinion that Plaintiff received an abundance of care for his numerous medical problems, including Hepatitis C and cirrhosis, from 1997 until the date of his release in April, 2003. Despite Plaintiff's repeated refusals to submit to the care of a specialist, his liver and metabolic enzymes and blood parameters were continuously monitored until the date of his release from prison. Plaintiff's list of medications and different treatment protocols for the different stages of liver deterioration that he suffered is extensive, as is the list for treatment of his other medical problems. There is simply no evidence to suggest that Plaintiff was ever denied the opportunity to be reviewed for treatment with interferon or ribavirin while he was a medically viable candidate, nor is there evidence that any Defendant intentionally ignored his serious medical needs in a deliberate attempt to cause him harm. While it is extremely unfortunate that Plaintiff's medical condition deteriorated because of his liver cirrhosis, this Court can find no evidence that his cirrhosis is a result of deliberate indifference by any Defendant. As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional right. *Youngberg v. Romeo,* 457 U.S. 307, 322-23 (1982).

Accordingly, for the foregoing reasons, it is the **RECOMMENDATION** of this Court that Defendants' Motion for Summary Judgment (Instrument nos. 19 through 25) be **GRANTED** and the instant case be **DISMISSED**.

The Clerk shall send a copy of this Report and Recommendation to the Plaintiff, who shall have until **November 25, 2005** in which to have written objections physically on file in the Office of the Clerk. The objections shall be mailed to the Clerk's Office at P.O. Drawer 2300, Galveston,

<u>Texas 77553</u> Failure to file written objections within the prescribed time shall bar an aggrieved party from attacking on appeal the proposed factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this the ___7th___ day of November, 2005.

John R. Froeschner
United States Magistrate Judge